2026 IL App (1st) 242009

SECOND DIVISION
August 4, 2026

No. 1-24-2009

| | |
|---|---|
| *In re* MARRIAGE OF | ) Appeal from the |
| | ) Circuit Court of |
| JENNIFER BROWN, f/k/a Jennifer Sontag, | ) Cook County |
| | ) |
| Petitioner-Appellant, | ) No. 2015 D 005948 |
| | ) |
| and | ) |
| | ) |
| BRIAN SONTAG, | ) Honorable |
| | ) Iris Chavira, |
| Respondent-Appellee. | ) Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice Ellis concurred with the judgment and opinion.

**OPINION**

¶ 1 Petitioner Jennifer Brown, formerly known as Jennifer Sontag, appeals the trial court's denial of her petition to designate a custodial parent for school purposes. On appeal, Jennifer contends that the trial court erred in denying her petition where the court (1) *sua sponte* struck portions of her petition that pled and addressed best-interest factors, (2) refused to apply the best-interests standard while adjudicating the petition, and (3) barred Jennifer's expert from testifying at the hearing. For the following reasons, we affirm.[1]

¶ 2        I. BACKGROUND

¶ 3 Jennifer married Brian Sontag, the respondent in these proceedings, on June 8, 2013. Their only child, D.S., was born on December 31, 2013.

---

[1]This case was recently reassigned to this panel due to the illness of the original authoring justice.

¶ 4    On January 25, 2016, their marriage was dissolved by a judgment that incorporated a parenting agreement (Allocation Judgment). Under the Allocation Judgment, the parties shared custody of D.S. and agreed that it was in his best interests that they "equally share in the decision-making responsibilities of education, health, religion, and extracurricular activities for the minor child." Jennifer and Brian were also allocated equal parenting time. As D.S. neared school age, they agreed that a "week-on, week-off" parenting schedule better suited the family than the schedule set forth in the Allocation Judgment. Jennifer and Brian have been operating under a "week-on, week-off" schedule for many years even though this arrangement was never reduced to writing or included in a court order.

¶ 5    Relevant here, the Allocation Judgment set forth the following:

"2.2 *RESIDENCE*. JENNIFER and BRIAN agree that the child's address of record for school purposes shall be reserved and the parties shall review this Agreement to determine whose address will be considered the child's address of record for school purposes in three (3) years from the date of the entry of the Judgment for Dissolution of Marriage. If unable to resolve said issue after consultation and mediation, a court proceeding may be filed by either party.

* * *

7.1 The parents acknowledge that they are attempting to resolve their differences through the use of this [Allocation Judgment] and they recognize that the details herein may require future adjustments and changes to reflect the minor child's best interest.

7.2 The parents also recognize that this [Allocation Judgment] is a dynamic concept subject to re-evaluation and change based upon a substantial change in circumstances of a

parent or child. To determine whether [a] different arrangement might better suit future circumstances, the parents hereby agree and stipulate:

A. This [Allocation Judgment] shall be reviewed jointly by parents at least on an annual basis;

B. That in the event the parents cannot agree as to vital non-emergency decision [*sic*] affecting the welfare of the minor child, the Circuit Court of Cook County shall retain continuing jurisdiction to adjudicate any disputed issue. The parents agree, however, that if any conflicts arise between the parents as to any of the provisions of this [Allocation Judgment] or the implementation thereof, that the complaining parent shall first notify the other parent in writing of the nature of the complaint and both parents shall make reasonable attempts to negotiate a settlement of the conflict.

  ***

D. Except as provided to the contrary herein, if the parents are unable to resolve their conflict within a reasonable period of time the parents must submit any such disputed issue or conflict for resolution to *** [a] mutually-agreed upon impartial mediator, certified by Cook County, before applying to the Court for relief as to all matters which do not involve serious endangerment of the minor child's physical, mental, moral or emotional health. In the event the mediation is unsuccessful, or if an immediate and serious endangerment is alleged, either party may file a court proceeding.

  * * *

8.1 *Amendments*. This [Allocation Judgment] *** contains the full and complete recitation of the understanding between the parents. No other representation or promises have been made by or to the other parent as an inducement to this agreement. Any and all modifications to this Judgment must be in writing and signed by both parties to be enforceable. No oral modifications shall be recognized by the Court."

¶ 6     When the Allocation Judgment was entered on January 25, 2016, D.S. was two years old. At the time, the judgment did not designate a custodial parent for school purposes but provided that the parties would make a designation "in three (3) years from the date of the entry of the Judgment for Dissolution of Marriage."

¶ 7     In the spring of 2019, Jennifer and Brian chose to enroll D.S. at Alcott Elementary School (Alcott), a Chicago public school located in the Lincoln Park neighborhood. Alcott has a residency requirement, so both parents moved within Alcott's district. Brian's address was used on the enrollment form for D.S. In May of 2021, Jennifer moved outside of Alcott's residential boundary. Brian continued to live within Alcott's boundaries, and in June of 2022, he purchased the condominium unit he had been renting. D.S. continued to attend Alcott using Brian's address for residency purposes.

¶ 8     In July of 2023, Jennifer informed Brian that she intended to move to Wilmette. She told him that she wanted to enroll D.S. in Wilmette schools. Since Brian did not agree to the transfer, the parties participated in mediation in September of 2023. However, they could not agree on whether D.S. should enroll in Wilmette schools.

¶ 9     On September 20, 2023, Jennifer filed a petition to designate herself as the custodial parent of D.S. for school purposes, pursuant to section 602.5 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/602.5 (West 2022). Therein, she alleged that she moved to

Wilmette "to provide the minor child enhanced academic, social, and extracurricular opportunities the parties enjoyed 'growing up in the suburbs.' " She did not believe the same opportunities existed at Alcott. Jennifer also expressed concern that the area where Brian resides has seen a "significant rise in violent crimes." She wanted D.S. to be able to "either walk or ride his bike to school," which he could not do at Brian's current residence because it was too dangerous.

¶ 10    The petition alleged that transferring D.S. to Wilmette schools "will have minimal effects on the parties' parenting time" and that Wilmette was a "safer location than Lincoln Park." The petition also set forth statistics comparing the rankings of Wilmette schools to Alcott and Lincoln Park High School. Since D.S.'s best friend was moving to California, Jennifer believed it was a good opportunity for D.S. "to find a new community of friends and peers in a neighborhood more amenable to doing so." The petition stated that Jennifer did not want to modify the parenting schedule and that the motion was brought based on her "well-founded belief as to the minor child's best interests." She requested that the trial court find it in D.S.'s best interests to designate her as the custodial parent for school purposes.

¶ 11    On October 20, 2023, Brian filed a motion to appoint a guardian *ad litem* on behalf of D.S. In the motion, Brian alleged that as D.S. was nearing school age, "the parties extensively researched schools in the Chicago area and determined that Alcott Elementary School (which serves kindergarten through 8th grade) ('Alcott') was a good fit for the Minor Child." Although both parties resided in the Alcott school district at the time, Jennifer subsequently moved outside of the district. To "provide stability for the Minor Child and to ensure that he could continue attending Alcott as agreed, Brian purchased a residence within the school district." Brian alleged that the parties' actions demonstrated their agreement that Brian's address would be the "address of record for school purposes" pursuant to the Allocation Judgment. He strongly believed that

removing D.S. from Alcott, "where he has thrived both academically and socially," was contrary to his best interests. Brian alleged that "[t]hrough her petition, Jennifer is seeking to change the designation of custodial parent for school purposes from Brian to herself so that she can move to Wilmette and enroll the Minor Child in school over Brian's objections and without agreement." Brian alleged that it was in the best interests of D.S. to appoint a guardian *ad litem*.

¶ 12 The trial court granted the motion. On November 27, 2023, Jessica Boike was appointed as D.S.'s guardian *ad litem* for the purpose of "School Enrollment."

¶ 13 Brian filed a response to Jennifer's petition on December 21, 2023. He alleged that the parties made the initial designation of custodial parent for school purposes "long ago." Therefore, "what Jennifer is actually seeking, despite the deceptive presentation of her Petition, is a modification of the established status quo—a request which presents a legal burden that Jennifer is unable to satisfy." Brian further alleged that "Jennifer does not demonstrate any changed circumstances or how such a significant disruption in the status quo (*i.e.* completely uprooting the child from his established school, activities, friends, and community) is in his best interests."

¶ 14 On January 24, 2024, Jennifer filed a motion to appoint Dr. Louis Kraus as an evaluator pursuant to section 604.10 of the Act (750 ILCS 5/604.10 (West 2024)). She alleged that an expert was needed to conduct evaluations and make recommendations on the issue of designating D.S.'s custodial parent for school purposes.

¶ 15 On February 13, 2024, Brian filed a motion for summary judgment, requesting that the trial court find that the parties had determined the designation of custodian for school purposes "years ago" and that Brian was that parent. He argued that Jennifer's petition was an attempt to modify the parties' Allocation Judgment. In her response, Jennifer denied that she was seeking to modify the judgment. She clarified that she was asking the court to find that it was in D.S.'s best interests

to attend school in Wilmette and to designate her as the custodial parent so that he can enroll in a Wilmette school.

¶ 16    On February 29, 2024, the guardian *ad litem* issued a report. After considering the information provided by the parties and speaking with D.S. generally about his school experience at Alcott, she concluded that "the status quo should continue."

¶ 17    A hearing was held on Brian's motion on March 13, 2024. After hearing argument, the trial court denied the motion for summary judgment. It found that (1) Jennifer's petition was a motion, not a pleading setting forth legal claims or defenses, and (2) even if her petition was seeking a modification, summary judgment would be denied because a question of fact existed as to the best interests of D.S. regarding his enrollment in school.

¶ 18    That same day, after hearing Brian's motion for summary judgment, the trial court heard argument on Jennifer's motion to appoint Dr. Kraus as a section 604.10(c) evaluator. The trial court denied the motion, reasoning that Jennifer's petition did not request an allocation of parental responsibilities, nor did it concern relocation. Instead, "what we're here for is a petition to designate mom as the custodial parent for school purposes. I don't think I need an evaluator to do that." The court believed that it was unnecessary "to submit this minor to multiple evaluations for an issue like this."

¶ 19    After the court's ruling, Jennifer filed her response to Brian's discovery requests in which she disclosed Dr. Kraus as her controlled expert witness. Brian issued a subpoena for records to Dr. Kraus. Brian then filed an emergency motion to bar Dr. Kraus based on the trial court's prior denial of his appointment as an evaluator.

¶ 20    On June 7, 2024, the trial court held a hearing on Brian's emergency motion. At the hearing, Jennifer argued that she had a right to retain an expert and present her case. She further argued that

she had not violated any rule that would result in a sanction that barred an expert witness. She assured the court that Dr. Kraus would testify on "only limited things" related to the best-interests standard.

¶ 21 The trial court granted Brian's motion, explaining, "what [Jennifer is] trying to do is *** to modify the allocation judgment. We are not even there yet. If we were there, it would be a best-interest determination and then, yes, we probably would need an expert. But in this situation, that's not what we are doing." The court continued, "this is a very simple issue. It is designating a school custodian. *** You are trying to turn it into something much more complicated than it is. It is not a best-interests analysis." The trial court did not believe Dr. Kraus could "provide any relevant testimony with regards to this issue."

¶ 22 On June 20, 2024, Jennifer filed an emergency motion to reconsider. The trial court held a hearing on the motion the following day. At the hearing, the court reiterated to Jennifer's counsel that it believed he was "conflating [section 606.10 (*id.* § 606.10)] with the modification statute and I know you don't agree with the Court." The trial court continued,

"The Court, however, does have discretion to exclude witnesses and evidence. The hearing in July is to designate a custodial parent under 606.10. And what the Court needs to decide is whether Mom or Dad is going to be custodian. I don't believe there's any testimony or evidence that your expert can provide to the Court to assist me in making that decision."

The trial court acknowledged that at one time, it "could have been incorrect in assuming that it was the best-interest standard." The court also noted that even after it had denied Jennifer's motion to name an expert, she "went ahead and *** hired him anyway" as her controlled expert. Jennifer then "disclosed his report *** 37 days before trial—or the hearing, which again, *** I don't even think he's needed." The trial court denied the motion.

¶ 23    On June 24, 2024, Jennifer notified Brian that she intended to make a formal offer of proof regarding Dr. Kraus' testimony at the hearing. Jennifer stated that she intended to call Dr. Kraus to testify "about the benefits and detriments of the choice of schools the parties are considering for the minor pursuant to 750 ILCS 5/602 *et seq.*"

¶ 24    On July 11, 2024, Brian filed an emergency motion to bar Jennifer's formal offer of proof and for sanctions. Although the trial court barred Jennifer from making a formal offer of proof, it gave her the opportunity to recite his testimony into the record at that time, but she declined. The court granted her leave to file a written offer of proof and Brian could file a written response. The trial court reminded Jennifer that although her petition was brought pursuant to section 602.5 of the Act, she had acknowledged before the court that she sought relief pursuant to section 606.10 (*id.*).

¶ 25    On July 17, 2024, Brian filed a motion *in limine* to exclude from the hearing all evidence related to statistics or third-party opinions made without personal knowledge when comparing Alcott with Wilmette schools. After a hearing, the trial court granted Brian's motion, finding that the issue before it was "very narrow." The court addressed Jennifer, advising her that it "had this discussion with counsel on multiple court dates." The court reiterated that the statute controlling the issue was section 606.10, not 602.5. The court informed Jennifer that "[e]ven if your motion is granted and you are designated the school custodian, that would not entitle you to remove the child from where the child has been attending school for the last five to six years." To do so, Jennifer "would have to establish via a Motion to Modify that it would be in the child's best interest, that the child be removed from the current school that *** he has been attending for the last five to six years, that that is in the child's best interest." Jennifer's counsel denied that he sought to modify the Allocation Judgment.

¶ 26    On July 18, 2024, the trial court held a hearing on Jennifer's petition to designate. Ms. Boike, Jennifer and Brian testified at the hearing. Ms. Boike testified that she considered "best interest *** as kind of a backdrop to make sure that the status quo would not be adverse to [D.S.'s] best interest, but *** I did not make my recommendation that Brian remain the residential custodian based upon the best interest of [D.S.]"

¶ 27    The trial court issued a written order on October 27, 2024. The order set forth the undisputed facts as testified by Jennifer and Brian at the hearing. The parties agreed that D.S. would attend Alcott beginning in kindergarten. "In May or June 2019, both parties moved within the Alcott boundaries. Jennifer agreed for Brian to enroll [D.S.] at Alcott using his address. Brian filled out all school enrollment forms using his address, and the parties have utilized his address every year since kindergarten."

¶ 28    Jennifer moved outside of Alcott's boundaries in 2021, and that same year Brian purchased his residence within the Alcott district because he believed one parent had to reside in the district for D.S.'s continued enrollment at Alcott. In April of 2024, Jennifer moved to Wilmette, which is outside of Alcott's boundaries. By this time, D.S. had attended Alcott for six school years. Brian was the only parent who resided within Alcott's boundaries for the past four years.

¶ 29    The trial court noted that the parties' Allocation Judgment did not require a written designation of custodial parent or the choice of school. In any event, Jennifer had agreed by her actions that Brian's address should be used to enroll D.S. at Alcott, and "her agreement is memorialized by the enrollment forms." The trial court found that "the parties designated Brian as custodial parent through their conduct over the last six school years."

¶ 30    The court characterized Jennifer's petition as "misguided" because she was seeking "relief that could never have been granted under the pleading that she brought." Jennifer incorrectly

believed that she could "unilaterally" change D.S.'s school "solely by being named custodial parent for school purposes." The court noted, however, that under section 606.10, "the designation is purely ministerial and has no bearing on either party's rights under the Allocation Judgment."

¶ 31 The trial court found that "Jennifer actually seeks a modification of the established status quo" because "she wants to be allocated as custodial parent so that she can enroll [D.S.] in school in Wilmette." The court noted that "Jennifer has sought relief that could never have been granted under the pleading that she brought." And yet, "this is the path Jennifer knowingly pursued." The trial court concluded that her desired relief "can only be accomplished through a modification proceeding brought pursuant to 750 ILCS 5/610.5." See *id.* § 610.5. The court denied Jennifer's petition, and she now appeals.

¶ 32                                    II. ANALYSIS

¶ 33 On appeal, Jennifer's contentions stem from the trial court's refusal to apply the best-interest standard when ruling on her petition to designate. She argues that, pursuant to the Allocation Judgment, she had a right to seek resolution of the designation dispute in court. By refusing to consider her best-interest argument, the trial court *sua sponte* struck portions of her pleading and "effectively rendered the dispute resolution process outlined in the Allocation Judgment moot." She contends that the trial court should have considered the best interests of D.S. when designating a custodial parent for school purposes and, accordingly, should have allowed Dr. Kraus to testify about whether enrollment in Wilmette schools would be in D.S.'s best interests.

¶ 34 In the proceedings below, Jennifer acknowledged that she sought the trial court's designation of a custodian for school purposes pursuant to section 606.10 of the Act. Section 606.10 provides:

"Solely for the purposes of all State and federal statutes that require a designation or determination of custody or a custodian, a parenting plan shall designate the parent who is allocated the majority of parenting time. This designation shall not affect parents' rights and responsibilities under the parenting plan. For purposes of Section 10-20.12b of the School Code only, the parent with the majority of parenting time is considered to have legal custody." *Id.* § 606.10.

¶ 35    It is undisputed that the parties' Allocation Judgment addressed the designation of a custodial parent for school purposes. A parenting agreement is a contract between the parties. *In re Marriage of Coulter*, 2012 IL 113474, ¶ 19. As such, our primary objective is to give effect to the intent of the parties at the time they executed the agreement. *In re Marriage of Hendry*, 409 Ill. App. 3d 1012, 1017 (2011). If the contract language is unambiguous, we must give that language its clear meaning without regard to the parties' subjective interpretations. *In re Marriage of Chez*, 2013 IL App (1st) 120550, ¶ 17. The interpretation of a parenting agreement is a question of law that we review *de novo*. *Coulter*, 2012 IL 113474, ¶ 19.

¶ 36    The relevant provision in the Allocation Judgment provides, in full, that:

"JENNIFER and BRIAN agree that the child's address of record for school purposes shall be reserved and the parties shall review this Agreement to determine whose address will be considered the child's address of record for school purposes in three (3) years from the date of the entry of the Judgment for Dissolution of Marriage. If unable to resolve said issue after consultation and mediation, a court proceeding may be filed by either party."

¶ 37    The Allocation Judgment was entered on January 25, 2016, when D.S. was two years old. Although there is no writing or court order memorializing the designation, the parties' conduct indicated that they made a designation in 2019. Evidence from the hearing showed that Jennifer

and Brian agreed D.S. would attend Alcott for kindergarten, and both parties moved within Alcott's residential limits in 2019. Brian filled out the school enrollment forms using his address, and the parties have used his address for school purposes every year starting in kindergarten. Even when Jennifer moved outside of Alcott's boundaries in 2021, D.S. continued to attend Alcott using Brian's address. This was not the only time Jennifer and Brian indicated their agreement through their actions. The parties have been following, without a written agreement, a "week-on, week-off" parenting schedule instead of the one set forth in the Allocation Judgment.

¶ 38 Moreover, the plain language of the provision did not require the designation itself to be in writing. While Jennifer may have believed that a written designation was required, her subjective understanding was immaterial where her conduct indicated her agreement to a particular term. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 313-14 (1987). In *Midland*, our supreme court found that in such circumstances, a meeting of the minds existed. "Otherwise, a party would be free to avoid his contractual liabilities by simply denying that which his course of conduct indicates." *Id.* We find, as did the trial court, that Jennifer and Brian made their designation regarding the custodial parent for school purposes in 2019, and Brian was that parent.

¶ 39 In arguing that the trial court should have made a designation pursuant to her petition and that it should apply the best-interest standard, Jennifer points to the dispute resolution process set forth in the Allocation Judgment. She then cites section 602.5, which generally provides that when a court makes a determination to allocate parental decision-making responsibilities, it must do so "according to the child's best interests" 750 ILCS 5/602.5(a) (West 2024).

¶ 40 The Allocation Judgment makes clear, however, that a party may initiate a court proceeding only if the parents cannot agree on which address will be used for school purposes. The record indicates that Jennifer and Brian agreed on that designation in 2019 pursuant to the terms of their

Allocation Judgment. As such, there was no reason for the trial court to do so. Section 602.5 is inapplicable here.

¶ 41    It is evident that, in filing her petition to designate, Jennifer wanted to *change* the designation from Brian to herself. D.S. had been attending Alcott since 2019, and she asserted that she approached Brian in 2023 about enrolling D.S. in a Wilmette school. Thus, she silently acknowledged that she did not oppose his attendance until 2023. She also acknowledged that Brian told her "he had no intention of having [D.S] 'switch schools.' " Changing the custodial designation to Jennifer, for the purpose of enrolling D.S. in a Wilmette school, would be a modification of the terms of the Allocation Judgment to which the parties had previously agreed. See, *e.g.*, *Bedford v. Bedford*, 2024 IL App (2d) 230296-U, ¶ 8 (a case where the parent who wanted to change the designation of custodian for school purposes filed a petition to modify the parenting plan); see also *In re Myers*, 2023 IL App (3d) 220375-U (finding that where the parenting plan designated use of the mother's address for school enrollment, and the child was enrolled in school pursuant to that address, the father's petition to enroll the child in a different school sought modification of the plan).[2]

¶ 42    Although section 606.10 is silent on the issue of modification, section 610.5(c) of the Act explicitly addresses modifications to the parenting agreement. Section 610.5(c) provides that the court shall modify an allocation judgment if it finds, by a preponderance of the evidence, that "a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests" 750 ILCS 5/610.5(c) (West 2024). The parties' Allocation Judgment mirrors this language, providing that it is "subject to re-

---

[2]Although *Bedford* and *Myers* are unpublished orders, they may be cited as persuasive authority under Illinois Supreme Court Rule 23(e)(1) (eff. Jan. 1. 2021).

evaluation and change based upon a substantial change in circumstances of a parent or child." The judgment recognized that its terms may undergo "future adjustments and changes to reflect the minor child's best interest."

¶ 43    Jennifer and her counsel, however, have consistently represented to the court below, and on appeal, that they are not seeking to modify the Allocation Judgment. As the trial court found, "Jennifer has sought relief that could never have been granted under the pleading that she brought." We agree with the trial court that if Jennifer wants a court to determine whether the custodial designation should be changed from Brian to herself, because enrolling in Wilmette schools would be in the best interests of D.S., she should file a petition pursuant to section 610.5 of the Act seeking modification of the Allocation Judgment.

¶ 44                                        III. CONCLUSION

¶ 45    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 46    Affirmed.

*In re Marriage of Brown*, 2026 IL App (1st) 242009

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2015-D-005948; the Hon. Iris Chavira, Judge, presiding. |
| **Attorneys for Appellant:** | Brian J. Hurst and Priyal Thakkar, of Hurst, Robin, Kay & Allen, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Margaret Keane, Rachel Gewurz, and Daniella Khersonsky, of Berger Schatz, of Chicago, for appellee. |